LAW OFFICES
BROENING OBERG WOODS & WILSON
PROFESSIONAL CORPORATION
2800 N. CENTRAL AVENUE, SUITE 1600
PHOENIX, ARIZONA  85004
(602) 271-7700

Robert T. Sullivan/Bar No. 022719
Nicole M. Prefontaine/Bar No. 035543
Email:  rts@bowwlaw.com
        nmp@bowwlaw.com
        lmb@bowwlaw.com
        ns@bowwlaw.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Larisa F. Stokes Trust f/b/o Kenneth Christopher Stokes, | NO. |
| Plaintiffs, | **COMPLAINT** |
| vs. | |
| Roberta Franzheim, an individual, | |
| Defendant. | |

Plaintiff Larisa F. Stokes Trust f/b/o Kenneth Christopher Stokes (hereinafter "Plaintiff" or "the Trust"), for its Complaint against Defendant Roberta Franzheim (hereinafter "Defendant" or "Roberta") alleges as follows:

## PARTIES, JURISDICTION & VENUE

1.      Plaintiff Larisa F. Stokes Trust f/b/o Kenneth Christopher Stokes is a trust administered in the state of Texas.

2.      Defendant Roberta Franzheim resides in Tucson, Arizona and is a resident of the state of Arizona.

3.      The subject of this action is an oil-on-canvas portrait titled "Kenneth Franzheim, F.A.I.A." by artist Diego Rivera and dated 1950 (hereinafter "the Portrait").

4.     The Portrait was valued at $200,000.00 on March 15, 2017. **See Exhibit A, March 15, 2017, Appraisal.**

5.     This case arises from Defendant's wrongful retention and refusal to return the Portrait to Plaintiff.

6.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

7.     Venue is appropriate in the Tucson Division of the United States District Court of Arizona under 28 U.S.C. § 1391 because the events giving rise to this action occurred in Pima County, Arizona.

## ALLEGATIONS COMMON TO ALL CLAIMS

8.     The Portrait was commissioned by Diego Rivera in 1950 and acquired by Kenneth Franzheim (hereinafter "KF-I") during his lifetime.

9.     KF-1 later bequeathed the Portrait to his son Kenneth Franzheim II (hereinafter "KF-II").

10.     Under the terms of KF-I's will, the Portrait, and KF-I's other art and furniture, were to be held by KF-II in trust for the benefit of any children born to him within seven years of KF-I's death.

11.      KF-I died in 1959, and within seven years of his death, KF-II had two children – Larisa and Roberta (Plaintiff).

12.     KF-II maintained the Portrait either at a residence in Paris, Kentucky or his residence or office in Houston, Texas, in trust for Larisa and Roberta.

13.     In 1986, KF-II established separate trusts for Larisa and Roberta, entitled the "Larisa Franzheim Management Trust" and the "Roberta Franzheim Management Trust," respectively.

14.     Each trust was conveyed a ½ undivided interest in all the art and furniture, including the Portrait.

15.     KF-II maintained the personal property, including the Portrait, as trustee.

2

16.     On February 15, 1991, each item in the management trust was designated to either Larisa or Roberta.

17.     The Portrait was designated to Larisa. **See Exhibit B, Larisa Franzheim Management Trust Agreement; and Exhibit C, Division of Property dated February 15, 1991.**

18.     Larisa died in 2000.

19.     Larisa's ½ undivided interest in the art and furniture because a part of her probate estate.

20.     Pursuant to Larisa's will, all property was to be held in trust for her son, Kenneth "Kenny" Christopher Stokes (hereinafter "Kenny"), until he reached age 28.

21.     Accordingly, the Larisa Franzheim Trust f/b/o Kenneth Christopher Stokes (hereinafter "the Trust") was established with Larisa's husband, Christopher Stokes, and Cadence Bank (fka Encore Trust Company) serving as co-trustees.

22.     The artwork and furniture, including the Portrait, remained at KF-II's Houston residence and office.

23.     KF-II died on 2007, and Risher Randall became the successor trustee for both of the management trusts.

24.     The furniture and artwork, including the Portrait, were appraised as a part of the estate process.

25.     The Portrait was appraised at $300,000 in 2008. **See Exhibit D, 2008 Appraisal.**

26.     In 2008, Christopher Stokes, Larisa's husband, and Roberta divided the management trusts' artwork and furniture, relying on appraisals of the property to ensure the relative value of the distribution would be equal. The previous designation of property as set forth in Exhibit B, was followed with some variations.

27.     Roberta agreed the Portrait should go to Larisa's son, Kenny.

28.     At the time the property was distributed, Kenny was age 14.

29.     Roberta wished to possess and display the Portrait in her home until Kenny reached age 28.

30.     Roberta and Christopher Stokes, as Co-Trustee for the Trust, entered into a written agreement ("the Agreement") in which Roberta could possess and display the Portrait until Kenny or the Trust requested its return in writing. **See Exhibit E, Agreement.**

31.     Pursuant to the Agreement, Roberta was obligated to maintain insurance covering the Portrait against any loss including damage or theft with the Trust to be identified as the loss payee.

32.     Additionally, Roberta agreed "to obtain a written appraisal of the [Portrait] at least every three years and provide a copy to the Trust and Kenneth."

33.     Upon such a request to return the Portrait, Roberta is to "deliver the [Portrait] without unreasonable delay and at her cost to the location designated by the Trust or Kenneth."

34.     Roberta signed the Agreement on October 29, 2008.

35.     Roberta has been in possession of the Portrait through the present date.

36.     Roberta last had the Portrait appraised on March 15, 2017, at which time the Portrait was appraised at $200,000.00. **See Exhibit A, 2017 Appraisal.**

37.     Thus, the Portrait is past due for an appraisal at Roberta's cost pursuant to the Agreement.

38.     Roberta has failed to pay insurance premiums at $810 annually since 2009.

39.     Roberta currently owes $4,860.00 payable to the Trust in unpaid insurance premiums. **See Exhibit F, Insurance Premiums and Correspondence.**

40.     The Trust, via Co-Trustee Cadence Bank, via Rita Bishop, has requested in writing that Roberta pay the outstanding insurance premiums multiple times since at least August 14, 2015. **See Exhibit F.**

4

41.     The Trust has requested Roberta return the Portrait pursuant to the Agreement multiple times since at least August 6, 2020. **See Exhibit G, August 6, 2020, Email to Defendant.**

42.     The Trust has called, emailed, texted, and written Roberta numerous letters requesting the Portrait be returned to the Trust pursuant to her agreed upon obligations in the Agreement for more than a year. **See Exhibit H, Correspondence with Roberta.**

43.     Specifically, the Trust has asked Roberta to provide her availability to allow for an appraisal of the Portrait at her home, with the Portrait to be shipped to the Trust immediately following the appraisal.

44.     As a courtesy to Roberta, and in an effort to expedite the process, the Trust had offered to pay the cost of shipping the Portrait back to the Trust, despite it being Roberta's legal obligation under the Agreement.

45.     To date, Roberta has stated she will not pay for the appraisal or shipping of the Portrait.

46.     To date, Roberta has been uncooperative in scheduling the appraisal/shipping of the Portrait.

47.     For **<u>over a year</u>**, Roberta has avoided, ignored, and breached her obligations under the Agreement, and has failed to return the Portrait.

48.     For several years, Roberta has failed to pay insurance premiums or obtain appraisals of the Portrait.

## <u>COUNT I – BREACH OF CONTRACT</u>

49.      Plaintiff incorporates and realleges paragraphs 1-48 as if fully set forth herein.

50.     The Agreement constitutes a valid contract between Plaintiff/the Trust and Defendant/Roberta.

5

51.     Pursuant to the Agreement, Roberta is required to (1) maintain insurance on the Portrait and pay the premiums, (2) obtain and pay for an appraisal of the Portrait, and (3) return the Portrait to the Trust, bearing the cost of shipping.

52.     To date, Roberta has refused to fulfill these obligations.

53.     Specifically, Roberta has failed to pay the insurance premiums for the Portrait.

54.     Roberta has also failed to obtain and pay for an appraisal of the Portrait.

55.     Finally, Roberta has failed to return the Portrait to the Trust.

56.     Roberta is therefore in breach of the Agreement as to all three of these obligations.

57.     The Trust has been damaged by Roberta's breach in an amount to be proven at trial.

### COUNT II – BREACH OF DUTY OF GOOD FAITH & FAIR DEALING

58.     Plaintiff incorporates and realleges paragraphs 1-48 as if fully set forth herein.

59.     Roberta has a duty of good faith and fair dealing under the Agreement.

60.     Roberta has breached her duty of good faith and fair dealing by failing to meet her obligations to (1) pay the insurance premiums, (2) obtain and pay for an appraisal, and (3) return the Portrait under the Agreement as set forth above.

61.     Roberta's failures are not justified nor excusable.

62.     Roberta's failures compelled Plaintiff to file this lawsuit to enforce the Agreement and recover the monetary damages it is owed by Plaintiff.

63.     Roberta's conduct has caused Plaintiff damages in an amount to be proven at trial.

### COUNT III - CONVERSION

64.     Plaintiff incorporates and realleges paragraphs 1-48 as if fully set forth herein.

65.     Plaintiff is the rightful and legal owner of the Portrait.

66.     Plaintiff entrusted the Portrait to Roberta pursuant to the Agreement.

67.     Plaintiff/the Trust requested Plaintiff return the Portrait, as required by the Agreement.

68.     Roberta wrongfully refused to return the Portrait to the Trust and continues to exercise dominion over it in her home in violation of the Agreement, for more than one year since Plaintiff's request for its return.

69.     The Trust has been damaged by Roberta's breach in an amount to be proven at trial.

70.     This action arises out of a contract. Pursuant to A.R.S. § 12-341.01 and 12-341, Plaintiff is entitled to its attorneys' fees and costs incurred in this action.

**WHEREFORE,** in light of the above allegations, Plaintiff prays for judgment against Defendant Roberta Franzheim as follows:

A.      Specific performance ordering Roberta to return the Portrait to the Trust within 30 days of the Order requiring the same or pursuant to the temporary restraining order (if the Court grants the application), whichever period is shorter;

B.      Specific performance ordering Roberta to pay for the cost of the appraisal of the Portrait before it is shipped back to the Trust;

C.      Specific performance ordering Roberta to pay for the cost of shipping the Portrait back to the Trust;

D.      Specific performance ordering Roberta to pay the Trust $4,860.00 in past-due insurance premiums;

E.      For an award of attorney's fees and costs incurred in this action, as well as pre-suit fees and expenses pursuant to A.R.S. § 12-341.01 and 12-341;

F.      Pre-judgment and post-judgment interest at an applicable statutory rate; and

G.      For such other and further relief against Roberta as the Court deems just and proper under the circumstances.

/ /

1     RESPECTFULLY SUBMITTED this 16th day of December, 2021.

2                             BROENING OBERG WOODS & WILSON, P.C.

4                   By: */s/ Nicole M. Prefontaine*

Robert T. Sullivan
Nicole M. Prefontaine
2800 N. Central Avenue, Suite 1600
Phoenix, Arizona  85004
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this December 16, 2021, I electronically transmitted the foregoing with the Clerk of the Court using the CM/ECF system for filing.

By */s/ Nicole J. Smith*